UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| MEGAN SIMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-04041-SLD-JEH |
| | ) |
| CHRISTINE WORMUTH, | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court is Defendant Secretary of the Army Christine Wormuth's Motion for Summary Judgment, ECF No. 7. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**[1]

**I.    Position**

Plaintiff Megan Sims was employed by Defendant as a GS-4 Medical Support Assistant at the Rock Island Arsenal ("RIA") Clinic (the "Clinic") from March 2018 to August 2019. She was promoted to GS-5 in March 2019. Sergeant First Class Eugenio Lolli was Plaintiff's first-level supervisor beginning in July or August 2018, and Dr. Aaron Jacob was her second-level supervisor beginning in October 2018. Plaintiff was on probation during the entire course of her employment at the Clinic.

---

[1] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, the factual background of this case is drawn from Defendant's statement of undisputed material facts, Defs.' Mem. Supp. Mot. Summ. J. 2–4, ECF No. 7-1; Plaintiff Megan Sims's statement of disputed material facts and additional material facts, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 2–7, ECF No. 9-1; Defendant's reply to Plaintiff's additional material facts, Def.'s Reply 2–5, ECF No. 10; and exhibits to the filings.

1

## II.    Counseling Memoranda and Meetings

On January 18, 2019, Lolli issued three memoranda regarding Plaintiff's alleged performance issues.[2] One noted that on January 17, 2019, Plaintiff "reported to work in unauthorized work attire." Jan. 18, 2019 Unauthorized Dress Mem., Def.'s Mot. Summ. J. Ex. 1 at 14, ECF No. 7-2 at 14. Another stated that on January 17, 2019, she had "failed to complete [her] primary mission of inputting appointments in to the . . . system," which "cause[d] some confusion" because other employees were not aware of patients coming in to be seen. Jan. 18, 2019 Failure Complete Task Mem., Def.'s Mot. Summ. J. Ex. 1 at 15, ECF No. 7-2 at 15. The third reported that on January 18, 2019, Plaintiff "failed to report for [her] scheduled shift at 9 a.m." and "did not notify [her] supervisor of [her] absence." Jan. 18, 2019 Failure Report Mem., Def.'s Mot. Summ. J. Ex. 1 at 16, ECF No. 7-2 at 16.

On March 13, 2019, Lolli issued a memorandum stating that the previous day, he had had to "call [Plaintiff] and wake her up for work" because she had overslept. Mar. 13, 2019 Failure Report Mem., Def.'s Mot. Summ. J. Ex. 1 at 13, ECF No. 7-2 at 13.

On May 24, 2019, Plaintiff received a counseling memorandum noting that on May 23, 2019, she had "spent well over an hour away from [her] work station area," which "cause[d] issues" because she needed to be "at [her] station helping Occupational Health Patients receive their paperwork." May 24, 2019 Counseling Mem., Def.'s Mot. Summ. J. Ex. 1 at 12, ECF No. 7-2 at 12. While Lolli acknowledged in the memorandum that "there [were] times that [she was] going to need to walk down to Occupational Health office," he asked her to "keep that down to a minimum" and further indicated that time away from her desk "need[ed] to be approved

---

[2] Plaintiff admits that these and all other counseling memoranda mentioned in this section were issued but "den[ies] the factual allegations contained in each." Pl.'s Mem. Supp. Resistance Mot. Summ. J. 2.

2

beforehand." *Id*. In the meeting at which she was given this memorandum, Lolli told Plaintiff that she was close to being fired.

On July 24, 2019, Jacob issued a counseling memorandum stating that Plaintiff was being counseled for failure to file patient records: Plaintiff "had well over one hundred charts/loose-papers . . . stacked on [her] desk and in the file room." July 24, 2019 Counseling Mem., Def.'s Mot. Summ. J. Ex. 1 at 11, ECF No. 7-2 at 11. The memorandum also noted to Plaintiff that "it is inappropriate to ask other employee(s) outside of [her] department to assist in completing th[e] task" of filing the records. *Id*.

On July 31, 2019, Plaintiff received a counseling memorandum indicating that she was "being counseled for 1) misplaced records [and] 2) failing to retire records in a timely fashion." July 31, 2019 Counseling Mem., Def.'s Mot. Summ. J. Ex. 1 at 10, ECF No. 7-2 at 10. The memorandum stated that two missing occupational health records and a large pile of records destined for retirement had been recovered in her work area, some of which were associated with a task Plaintiff had been assigned in 2018. *Id*. At a meeting that same day, Jacob told Plaintiff that failing to retire records in a timely fashion was grounds for termination during her probationary period.[3]

### III.    Evaluation

In April 2019, Plaintiff received a "[f]ully [s]uccessful" performance rating in her appraisal. *See* Appraisal 99, Def.'s Mot. Summ. J. Ex. 1 at 92–100, ECF No. 7-2 at 92–100.[4] The appraisal noted that she "[n]eed[ed] to spend more time learning the systems to better understand her job, *id*. at 94; that she "had some issues with booking appointments to meet the

---

[3] Plaintiff "[a]dmits that this is what . . . Jacob[] stated but denies that [P]laintiff failed to retire records in a timely fashion." Pl.'s Mem. Supp. Resistance Mot. Summ. J. 3.
[4] Because the Appraisal is not consecutively paginated, the Court uses the ECF numbers in citing to particular pages.

team standard" but was "trying to develop better skills," *id*. at 95; that she "had issues at time[s] with time cards being correct" but that she was "able to fix them," although she "had two time cards fixed out side [sic] the time limit," *id*. at 96; that "[i]t ha[d] taken a little longer than expected to get her system in place and a good steady rhythm for this" and that she "[h]ad the Medical Director talk to her about getting paperwork filed and completed," *id*. at 97; and that she went "out of [her] way to communicate with patients, pharmacy staff, and clinic staff in a professional manner," was "[a]lways willing to answer questions for patients and staff," was "able to point the patient to the proper people with the correct information" if she did not have it, and was "[a]lways courteous to staff and patients," *id*. at 98.

IV. **Termination**

In April 2019, Jacob contacted Kenneth Elshoff, a Human Resources Specialist at the RIA, and expressed his frustration with Plaintiff's conduct. Elshoff informed Jacob that they "could terminate her because she was on probation." Elshoff Decl. 6, Def.'s Mot. Summ. J. Ex. 1 at 237–244, ECF No. 7-2 at 237–244.

On August 21, 2019, Jacob terminated Plaintiff's employment with the RIA. She was still in her probationary period. The Notice of Termination stated that she was being terminated for "failure to input appointments in to the . . . system; failing to report to work on the beginning of [her] tour of duty on two separate occasions; failing to follow supervisory instructions; violating the health clinic dress code; misplacing medical records; and failure to file records in a timely manner." Not. Termination 1, Def.'s Mot. Summ. J. Ex. 1 at 69–72, ECF No. 7-2 at 69–72.[5]

---

[5] Plaintiff admits that she was terminated and does not dispute that the Notice of Termination included these statements but "[d]enies that [she] engaged in the conduct listed." Pl.'s Mem. Supp. Resistance Mot. Summ. J. 3.

4

V.     **Procedural History**

Plaintiff initially contacted an Equal Employment Opportunity ("EEO") counselor on June 7, 2019. She filed a formal complaint alleging gender discrimination on July 16, 2019. On August 26, 2019, after Plaintiff was terminated, her EEO complaint was amended to include an allegation that her termination was reprisal for prior protected activity. The EEO office requested a final agency decision letter on April 6, 2020, but 180 days passed without agency action.

Plaintiff filed this suit on March 11, 2021. Compl., ECF No. 1. She brings claims for sex discrimination (Count I) and retaliation (Count II). *Id*. at 3–4. Defendant moves for summary judgment on both of Plaintiff's claims. Def.'s Mem. Supp. Mot. Summ. J. 1–2, ECF No. 7-1.

## DISCUSSION

I.     **Legal Standard**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where one party has properly moved for summary judgment, the nonmoving party must respond "by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Parties may not merely refer to their own pleadings, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), but must instead "cit[e] to particular parts of materials in the record, including depositions, documents,

[and] . . . affidavits or declarations" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute," Fed R. Civ. P. 56(c)(1).[6]

The court is to "constru[e] the record in the light most favorable to the nonmovant," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant*, 870 F.3d at 568. However, the nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted).

## II. Analysis

### a. Sex Discrimination

In Count I of her complaint, Plaintiff claims that Defendant discriminated against her on the basis of her sex by terminating her. Compl. 3.[7] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–e17, provides that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of

---

[6] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

[7] Plaintiff also alleges Defendant discriminated against her by subjecting her to discipline when male employees engaged in similar misconduct and were not disciplined. Compl. 3. Her response memorandum suggests that this discipline consisted of the counseling memoranda and of incidents in which Lolli would "yell and point his finger at her." *See* Pl.'s Mem. Supp. Resistance Mot. Summ. J. 4–7, 11. Neither the alleged yelling incidents nor the counseling memoranda constitute an adverse employment action for purposes of a sex discrimination claim. The Seventh Circuit "ha[s] defined adverse employment actions quite broadly," but "adverse actions must be materially adverse to be actionable," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612–13 (7th Cir. 2001) (quotation marks omitted) (noting that an adverse employment action must "implicat[e] sufficiently tangible job consequences to constitute an independent basis of liability under Title VII" (quotation marks omitted)), *overruled on other grounds by Ortiz*, 834 F.3d 760. The Court does not "believe that the oral or written reprimands received by [Plaintiff] . . . can be considered, on this record, as implicating sufficiently tangible job consequences to constitute an independent basis of liability under Title VII." *See id*. at 613 (quotation marks omitted). As in *Oest*, Plaintiff "has not pointed to any immediate consequence of the reprimands, such as ineligibility for job benefits like promotion, transfer to a favorable location, or an advantageous increase in responsibilities." *See id*.

such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). When evaluating a Title VII claim of employment discrimination at summary judgment, a district court must determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . . caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).[8] A plaintiff may cite to direct or circumstantial evidence of discrimination to show causation; examples of circumstantial evidence that may "support an inference of intentional discrimination [include] ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . . ." *Ortiz*, 834 F.3d at 765. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

One method a plaintiff may use for "organizing, presenting, and assessing circumstantial evidence" in discrimination cases is the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which

> the plaintiff has the initial burden of establishing that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer;

---

[8] In the Seventh Circuit, courts "generally apply the same standards to Title VII and [42 U.S.C. §] 1981 race discrimination claims at the summary judgment stage." *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013); *see also James v. Get Fresh Produce, Inc.*, No. 18 C 4788, 2018 WL 6199003, at *8 (N.D. Ill. Nov. 28, 2018) ("[T]he substantive standards and methods of proof that apply to claims of [employment] discrimination and retaliation under Title VII also apply to claims under § 1981."). Thus, the Court cites to § 1981 and Title VII cases interchangeably.

the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224–25 (7th Cir. 2017) (alteration in original) (quotation marks omitted).

Defendant contends that she is entitled to summary judgment on Plaintiff's sex discrimination claim, arguing that Plaintiff has neither satisfied her burden of establishing a *prima facie* case under the *McDonnell Douglas* framework nor shown that there is sufficient evidence in the record as whole to demonstrate discrimination. Def.'s Mem. Supp. Mot. Summ. J. 6–9. The Court will examine whether Plaintiff has satisfied her burden under either method.

### i. *McDonnell Douglas* Burden Shifting Framework

Two of the four elements necessary to establish a *prima facie* case under the *McDonnell Douglas* framework are not in dispute: Plaintiff is a member of a protected class, and she was subjected to an adverse employment action when she was terminated. To fulfill her initial burden, she must also show that she was meeting Defendant's legitimate expectations at the time she was fired and that Defendant treated similarly situated male employees more favorably. *See David*, 846 F.3d at 225.

The Court turns first to the "similarly situated" element. "[W]hether employees are similarly situated is a flexible, common-sense, and factual inquiry." *Id.* at 225 (quotation marks omitted). The court should consider such factors as "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Id*. at 226 (quotation marks omitted). If sufficient information is not provided, the court cannot find

employees to be comparable. *See Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 676–77 (7th Cir. 2006) (affirming a grant of summary judgment on a race discrimination claim where, while the employee claimed that "there were four white, comparable . . . employees who engaged in analogous acts . . . , the record [wa]s devoid of any information as to the specifics of their actions, their supervisor, or any mitigating circumstances"). The burden of establishing that an employee is similarly situated—through citations to evidence—belongs to Plaintiff. *See David*, 846 F.3d at 225.

Plaintiff suggests that Todd Cousins, a male medical support assistant whose first-line supervisor was Lolli and whose second-line supervisor was Jacob, was treated more favorably than she in that Lolli "took no disciplinary action against [Cousins]" even though he was more than a half-hour late to work on six occasions between October 2018 and July 2019. Pl.'s Mem. Supp. Resistance Mot. Summ. J. 4, 14, ECF No. 9-1. But Plaintiff has admitted that she was on probation the entire time she worked for Defendant, Def.'s Mem. Supp. Mot. Summ. J. 2; Pl.'s Mem. Supp. Resistance Mot. Summ. J. 2, and she has cited to no evidence that—nor does she claim that—Cousins was likewise on probation when he was allegedly treated more favorably. This distinction is relevant because the Clinic's process for terminating probationary employees differs from that for terminating non-probationary employees: Elshoff attested in his declaration that "[p]robationary employees are not entitled to due process" during termination proceedings and that probationary employees can be removed "for singular offenses, such as failure to follow supervisory instructions." *See* Elshoff Decl. 5, 6. Thus, in the absence of evidence that Cousins was also a probationary employee, Plaintiff has not shown that she and Cousins were "subject to the same standards," defeating her argument that they are suitable comparators. *See David*, 846

F.3d at 226. As such, Plaintiff has not satisfied her burden under the *McDonnell Douglas* framework.[9]

### ii. Evidence as a Whole

While Plaintiff has not established a genuine issue of fact as to whether her termination was discriminatory under the *McDonnell Douglas* framework, her claim may nonetheless survive summary judgment if the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . . caused the discharge." *See Ortiz*, 834 F.3d at 765. However, evidence that sex played any role in Plaintiff's termination is completely absent from the record. Rather, Plaintiff argues only that she has established a *prima facie* case of sex discrimination and that a question of material fact exists as to whether the reasons given for her termination were pretextual, Pl.'s Mem. Supp. Resistance Mot. Summ. J. 14–15, but, as discussed above, the Court does not find that Plaintiff has identified any adequate comparators, dooming her *prima facie* case.

All of the evidence, considered cumulatively, would not permit a reasonable factfinder to conclude that Plaintiff was terminated because of her sex. *Cf. Ortiz*, 834 F.3d at 766 (finding that there was a genuine dispute as to whether an employee was terminated because of his Mexican ethnicity because there was evidence that the employee's managers repeatedly directed ethnic slurs at him, he was allegedly fired for engaging in a practice that was common at the company, and there was no express policy that forbid the practice). The Court thus grants summary judgment in Defendant's favor on Plaintiff's claim that her termination constitutes sex discrimination.

---

[9] Because Plaintiff has not identified any similarly situated male employees who were treated more favorably, the Court does not find it necessary to discuss in this section whether Plaintiff was meeting Defendant's legitimate expectations.

b. **Retaliation**

In Count II, Plaintiff alleges that Defendant retaliated against her for pursing an EEO claim by terminating her.[10] Compl. 3–4. 42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to an unlawful employment practice. To establish retaliation, a "plaintiff must prove that he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).[11] In this context, causation means but-for causation. *Id.*

At summary judgment, "the plaintiff[] must produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have." *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012). "[C]ausation can be established by circumstantial evidence," such as "suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (quotation marks omitted); *cf. Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) (cautioning that while evidence of suspicious timing can be helpful to a finding of retaliation, "temporal proximity between an employee's protected activity

---

[10] Plaintiff also alleges that Defendant "by [her] supervisor employee Aaron Jacob retaliated against . . . [P]laintiff for her pursuit of an EEO claim by expressly stating to [P]laintiff that he was angry with her for bringing the EEO into his house on July 31, 2019." Compl. 4. This purported statement does not count as an adverse employment action for purposes of a retaliation claim. While Jacob's alleged statement is certainly evidence relevant to whether Plaintiff's ultimate termination was motivated by retaliation, Jacob's statement is not a "sufficiently tangible job consequence[]" such as to constitute an adverse employment action by itself. *See Oest*, 240 F.3d at 613 (quotation marks omitted).

[11] While courts previously distinguished direct from indirect evidence of causation when evaluating a claim of retaliation, the Seventh Circuit has "jettisoned that approach in favor of a more straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?" *Lord*, 839 F.3d at 563.

and an adverse employment action is rarely sufficient to show that the former caused the latter" (quotation marks omitted)). When the plaintiff has provided circumstantial evidence of a retaliatory motive, his employer may then "show that the employee would have been fired even absent his [engaging in the protected activity]"—undercutting retaliation as the but-for cause of the adverse action. *Lord*, 839 F.3d at 564. However, the plaintiff can avoid summary judgment if he shows that a genuine dispute of material fact exists as to whether the employer's purported motive is pretextual. *Id*. "In determining whether the employer's reason can be characterized as pretextual, [courts] do not evaluate whether the employer's proffered justification was accurate or even whether it was unfair"; rather, the "sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020).

Plaintiff identifies several pieces of evidence she believes show that a genuine dispute of material fact exists as to the true reason for her termination. *See* Pl.'s Mem. Supp. Resistance Mot. Summ. J. 9–12. First, in her affidavit, she states that on July 24, 2019, after she had filed a formal complaint with the EEO office on July 16, 2019, Jacob called her in for a meeting, at which "[h]e yelled that it was [her] fault that there was an EEO investigation in his 'house' and he informed [her] that because of this if it was the last thing he did he would see to it that [she] would be fired."[12] Sims Aff. ¶ 11, Pl.'s Mem. Supp. Resistance Mot. Summ. J. Ex. 2, ECF No. 9-1 at 17–21. Second, she points to Todd Cousins, who she alleges was a similarly situated male employee who "escaped discipline despite repeatedly being more than a half hour late for work."

---

[12] Defendant denies that Jacob made this statement and argues that it contains inadmissible hearsay. Def.'s Reply 4. As Plaintiff states that Jacob made the statement in his role as an RIA employee, it falls within the hearsay exclusion for statements made by an opposing party's agent or employee. *See* Fed. R. Evid. 801(d)(2)(D) ("A statement that meets the following conditions is not hearsay: The statement is offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed.").

Pl.'s Mem. Supp. Resistance Mot. Summ. J. 10, 11–12.  Third, she cites to portions of her affidavit in which she disputes that she committed any of the infractions listed in the Notice of Termination as reasons for her firing.  *Id*. at 2–3, 10–11 (citing Sims Aff. ¶¶ 5–12).

As noted above, *see supra* Section II(a), the Court does not find Cousins an adequate comparator because Plaintiff provides no evidence that he, like her, was on probation and subject to the standards unique to that status.  However, the assertions contained in Plaintiff's affidavit create a genuine dispute of material fact as to whether she was terminated because of the incidents mentioned in the Notice of Termination or as retaliation for her EEO claim.

Jacob's purported statement to Plaintiff that he would fire her for making the EEO claim is evidence from a which a reasonable jury could conclude that he, the ultimate decision-maker, had a motive to retaliate against Plaintiff and, further, that he carried out his threat by terminating her approximately a month later.  Defendant argues that this statement is "unsupported by the evidence of record," citing to statements EEO counselor Mary Gale took from three parties, including Plaintiff, in the days following the purported statement which do not mention it.  *See* Def.'s Reply 4, ECF No. 10 (citing Am. Incidents Notes, Def.'s Mot. Summ. J. Ex. 1 at 25–26, ECF No. 7-2 at 25–26).  But this discrepancy goes to Plaintiff's credibility, which the Court does not assess at this stage—it is for the jury to determine whether this statement was actually made.  *See Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) ("[T]he district court's role in deciding the motion [for summary judgment] is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe.").

Moreover, Plaintiff has provided evidence from which a reasonable jury could conclude that the reasons for termination provided by Defendant were pretextual.  Defendant argues that the Court cannot rely on "Plaintiff's subjective assertion" in her affidavit that "she did not violate

her employer's standards on any of eight occasions for which she was counseled in writing"—such "self-serving and speculative" denials, Defendant contends, cannot "negate the[] evidentiary value" of the series of business records documenting Plaintiff's alleged misconduct. Def.'s Reply 6. But the Seventh Circuit "ha[s] routinely found that a nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion" as long as the assertions contained in the affidavit are based on personal knowledge. *Payne*, 337 F.3d at 771–72; *see also Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014) ("Self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment."). An affidavit may also include reasonable inferences, as long as the inferences are "grounded in observation or other first-hand personal experience." *Payne*, 337 F.3d at 772 (quotation marks omitted). Defendant appears to believe that her business records are simply more credible than Plaintiff's affidavit. But, as stated above, it is not the Court's role at summary judgment to make this determination. *See Waldridge*, 24 F.3d at 920.

In the Notice of Termination, Jacob stated that he decided to terminate Plaintiff for "failure to input appointments in to the . . . system; failing to report to work on the beginning of [her] tour of duty on two separate occasions; failing to follow supervisory instructions; violating the health clinic dress code; misplacing medical records; and failure to file records in a timely manner." Not. Termination 1. These rationales are consistent with the counseling memoranda Plaintiff received both before and after her EEO claim. *See* Jan. 18, 2019 Unauthorized Dress Mem.; Jan. 18, 2019 Failure Complete Task Mem.; Jan. 18, 2019 Failure Report Mem.; Mar. 13, 2019 Failure Report Mem.; May 24, 2019 Counseling Mem.; July 24, 2019 Counseling Mem.; July 31, 2019 Counseling Mem.

But in her affidavit, Plaintiff disputes the factual bases for many of these alleged instances of misconduct, and her evidence, if believed by a jury, could support a finding that Jacob did not honestly believe the reasons provided in the Notice of Termination. One January 18, 2019 memorandum states that Plaintiff failed to correctly input appointments into the system, Jan. 18, 2019 Failure Complete Task Mem.; Plaintiff asserts that she "made inputs into the . . . system" and "did not fail to properly book appointments for patients," Sims Aff. ¶ 5. Another memorandum from that same date states that Plaintiff failed to report for her scheduled shift on January 18, 2019 and did not notify her supervisor that she would be absent, Jan. 18, 2019 Failure Report Mem.; Plaintiff states that she had informed Lolli the previous day that she had strep throat and would take January 18 off and that Lolli had approved her use of sick leave, Sims Aff. ¶ 5. On July 24, 2019, Jacob wrote in a memorandum that Plaintiff was being counseled for her failure to file patient records, July 24, 2019 Counseling Mem.; Plaintiff asserts that she was up to date on filing and that "there were no medical charts that still needed to be filed," Sims Aff. ¶ 11. And in a memorandum issued on July 31, 2019, Jacob stated that missing health records had been found on Plaintiff's desk and that there were a large pile of records that she was supposed to have retired, July 31, 2019 Counseling Mem., but Plaintiff states that she "did not have two occupational health records in [her] work area" and that she had been instructed that the pile of records on her desk would be picked up by Army personnel and she was not tasked with packing and shipping the records, Sims Aff. ¶ 12.

Plaintiff does not dispute that she was away from her desk for more than an hour on May 23, 2019, as stated in the memorandum from May 24, 2019, *see* May 24, 2019 Counseling Mem., although she states that she was engaging in her regularly assigned duties while away from her desk. *See* Sims Aff. ¶ 9. Plaintiff also admits that she woke up late on March 13, 2019

15

and that Lolli called her when she did not show up, which corresponds with the memorandum Lolli issued based on the incident, *see* Mar. 13, 2019 Failure Report Mem., but she insists that Lolli agreed that she could use paid time off to cover her absence. Sims Decl. 5, Def.'s Mot. Summ. J. Ex. 1 at 174–186, ECF No. 7-2 at 174–186. As for the memorandum regarding her supposedly inappropriate work attire, Jan. 18, 2019 Unauthorized Dress Mem., Plaintiff says only that she had been wearing "a red and black blouse and black slacks to work" and that she "had worn this outfit at least two occasions prior" to that day, Sims Aff. ¶ 5. None of Plaintiff's statements, on their own, establish that Defendant did not honestly believe Plaintiff was engaging in workplace misconduct by being away from her desk for so long, by waking up late, or by wearing that particular outfit. But the Notice of Termination does not specify whether Plaintiff was being terminated for all of the reasons mentioned in combination or whether Defendant considered each one of those reasons independently sufficient. The Court will not engage in speculation as to whether Defendant would have terminated Plaintiff if only some of the incidents mentioned had occurred.

Thus, the Court finds that there is a factual dispute as to whether several of the incidents cited in Plaintiff's Notice of Termination actually occurred, and that a reasonable jury could conclude that, as Defendant knew that several of the reasons listed in the Notice of Termination were false, the justifications for Plaintiff's dismissal were pretextual. And even if a jury believed that all of the counseling incidents had occurred, it could find, based on Jacob's statement and the fact that Plaintiff was fired only after the July EEO claim and not after several incidents of alleged misconduct in January, March, and May, that Defendant did not intend to fire her

because of the misconduct but simply used those incidents to cover up its true motivation of punishing her for contacting the EEO office.[13]

Plaintiff's evidence is "sufficient . . . to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge[.]" *See Lord*, 839 F.3d at 563. Summary judgment as to Plaintiff's retaliation claim is therefore denied.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment, ECF No. 7, is GRANTED IN PART and DENIED IN PART. Defendant is entitled to summary judgment on Count I. Summary judgment is denied as to Count II.

Entered this 8th day of March, 2022.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

---

[13] Indeed, Jacob was aware he could fire Plaintiff based on the alleged misconduct as early as April 2019. *See* Elshoff Decl. 6. However, he failed to act on this until after Plaintiff had filed an EEO claim.